**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 3:16-85** |
| **EVANS SAMUEL SANTOS DIAZ,** | **:** | **(JUDGE MANNION)** |
| **Defendant** | **:** | |

## MEMORANDUM

Before the court is defendant Evans Samuel Santos Diaz's Motion to Correct Sentence, (Doc. 379), pursuant to F.R.Crim.P. 35(a) based on the court's imposition of a no-contact order as a condition of his sentencing. For the following reasons, the motion will be **DENIED**.

### I.     BACKGROUND

On January 31, 2018, defendant was convicted of conspiracy to possess with intent to distribute heroin and cocaine and sentenced to 33 months imprisonment and three years of supervised release. (Docs. 310, 311). During his supervised release, defendant engaged in a physical domestic incident and marijuana use, in violation of the conditions of his supervised release. (Doc. 357).

The physical domestic incident involved Amanda Fernandez ("Fernandez") and occurred on September 19, 2021. *Id.* at 1-2. Fernandez reported defendant had struck her. *Id*. Upon an investigation of the incident,

police officers viewed defendant's Facebook account and confirmed video postings of Fernandez on the floor requesting help while on the phone with 911 emergency dispatch. *Id*. Relating to this incident, defendant was charged with strangulation, simple assault, and harassment and ultimately pled guilty to disorderly conduct in state court. *Id*; (Rev. Hearing Trans. at 5:18-6:16).

At a September 27, 2021 detention hearing before Magistrate Judge Joseph F. Saporito, Jr., defendant was released pending his revocation hearing pursuant to certain conditions, including that defendant refrain from any contact with Fernandez. (Doc. 365; Doc. 366 at 2). At an October 4, 2021 hearing before Magistrate Judge Saporito, Jr., the defendant admitted he had contacted Fernandez in violation of the terms of his supervised release. (Doc. 373 at 10:13-16). The record indicates, and the defendant does not dispute, from September 19, 2021 through September 27, 2021, defendant asked Fernandez to recant her testimony as well as destroy evidence relating to the September 19, 2021 incident, and convince her mother to not get involved in this case. (Doc. 373 at 3:1-6:8).

At a revocation hearing before this court on December 6, 2021, defendant pled guilty to violating the conditions of his supervised release by engaging in disorderly conduct on September 19, 2021 and using marijuana. (Rev. Hearing Trans. at 6:19-7:8). This court sentenced defendant to 24

- 2 -

months imprisonment and two years' supervised release. ([Doc. 377](); Rev. Hearing Trans. at 19:18-23). This court further ordered defendant refrain from any contact with Fernandez. (*See* [Doc. 377 at 5](); Rev. Hearing Trans. at 21:7-11).

On the same day, defendant filed a Motion to Correct Sentence and a brief in support of his motion. ([Docs. 379](), [380]()). Plaintiff the United States of America (the "Government") filed a brief in opposition on December 9, 2021, ([Doc. 381]()) to which defendant replied on December 10, 2021, ([Doc. 383]()). Defendant's Motion to Correct Sentence is fully briefed and now ripe for disposition.

## II.   STANDARD

Federal Rules of Criminal Procedure Rule 35(a) provides district courts with narrow authority to correct a sentence. *[United States v. Washington, 549 F.3d 905, 916 (3d Cir. 2008)]()*. A motion pursuant to Rule 35(a) must be filed within 14 days after sentencing and is limited in scope to correcting a sentence that resulted from "arithmetical, technical, or other clear error." *See* [F.R.Crim.P. 35(a)](); *see also*, *[U.S. v. Martorano](), No. 83-314-01, 2007 WL 3071620, \*2 (E.D.Pa. Oct. 19, 2007)* ("A motion brought under Rule 35(a) is limited to requesting the correction of an illegal sentence")(*citing [United]()*

- 3 -

*States v. Little*, 392 F.3d 671, 677 (4th Cir.2004)). According to the Advisory Committee Note on Rule 35:

> The authority to correct a sentence under this subdivision is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would most certainly result in a remand of the case to the trial court for further action under Rule 35(a).

*See* Fed.R.Crim.P.35 Adv. Comm. Note.

## III.   DISCUSSION

Defendant contends the court clearly erred when it included the no-contact order as a condition to the defendant's sentence. In support of his position, defendant argues the court lacked statutory or inherent authority to impose the contact prohibition. (Doc. 380 at 2). Alternatively, he contends that even if the court had inherent authority, it did not afford procedures or engage in analysis that must precede the exercise of such authority. *Id*. at 2-3.

As an initial matter, defendant has not cited, and this court could not locate, any binding precedent upon this court or clear persuasive consensus among other Circuits indicating that either a no-contact order falls outside the scope of the court's inherent authority or this court failed to observe

- 4 -

certain procedural requirements in issuing its order. Thus, the defendant's arguments do not directly implicate an "arithmetical, technical, or other clear error" pursuant to Fed.R.Crim.P. 35. Moreover, the court perceives no such error in the no-contact order imposed.

The Supreme Court has recognized that a district court retains certain inherent powers which it must exercise with "restraint and discretion." *Chambers v. NASCO*, 501 U.S. 32, 44 (1991) (citations omitted). Among these is a court's power to punish for contempt, which arose from "not…merely the disruption of court proceedings," but rather the "disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." *See* *id*. (citations omitted) (internal quotations omitted). Also among the court's inherent powers is the power to "vacate its own judgment upon proof that a fraud has been perpetrated upon the court" as "is necessary to the integrity of the courts, for tampering with the administration of justice in [this] manner ... involves far more than an injury to a single litigant." *See* *id*. (citations omitted) (internal quotations omitted) (alterations in the original). It is also well-established that a court may issue a protective order under the inherent "equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." See *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 35 (1984) (citations omitted).

- 5 -

Neither the Third Circuit Court of Appeals nor the Supreme Court has yet considered whether district courts have the inherent authority to condition a criminal sentence on a no-contact order post-trial. Accordingly, we look to the decisions of other Circuits which have taken a position on this issue and consider their conclusions instructive here. In *Wheeler v. U.S.*, 640 F.2d 1116, 1123-1125 (9th Cir. 1981), the Ninth Circuit concluded it was within the district court's inherent power to protect the sound administration of justice by applying a no-contact order to protect a witness against a defendant who threatened to reveal discrediting information about her. *See id*. at 1123-24 ("By protecting the witness after trial, the court is encouraging that witness, and other potential witnesses, to come forward and provide information helpful to the implementation of justice."). In *U.S. v. Morris*, 259 F.3d 894 (7th Cir. 2001), the Seventh Circuit affirmed the district court's no-contact order as appropriate in compelling circumstances, including where the order's purpose is to protect the victim from further harassment and reduce the possibility of creating a reluctant witness. *Id*. at 901. Thus, both the Ninth and Seventh Circuits have upheld a no-contact order imposed in response to credible concerns of harassment that would interfere with the administration of justice.

Accordingly, this court finds no clear error in its imposition of the no-contact order, as the order fell within the scope of a district court's inherent

- 6 -

authority to prevent "abuses, oppression, and injustice" in the administration of justice as observed by other Circuits. *See Rhinehart*, 467 U.S. at 35 (citations omitted). Circuits that have addressed district courts' inherent authority to issue no-contact orders have deemed such orders are within a district court's powers to avoid conduct that would interfere with the administration of justice or protect victims or witnesses. *E.g.*, *Wheeler*, 640 F.2d 1116; *Morris*, 259 F.3d 894. Here, the defendant admitted having violated the conditions of the court's September 27, 2021 supervised release by contacting Fernandez numerous times. (Doc. 373 at 10:13-16). Based upon the undisputed record, it appears defendant attempted to coerce Fernandez during the September 19, 2021 incident and subsequent communications in which defendant asked Fernandez to recant her prior testimonies, destroy evidence, and convince another witness to not become involved in this case. *Id*. at 3:3-10:16. The court finds such conduct implicates the obstruction of justice and increases the possibility of creating a reluctant or tampered witness in future cases concerning the September 19, 2021 incident. As such, this court finds no clear error with respect to its issuance of the no-contact order pursuant to its inherent powers.

Further, defendant's contention that the court clearly erred as it did not follow certain procedures or analysis upon exercising its inherent authority is unconvincing. Defendant appears to argue the court was required to invoke

- 7 -

inherent authority in some manner upon imposing the no-contact order. (Doc. 380 at 4-5; Doc. 383 at 2-4). In support of his position, defendant cites *U.S. v. Darwish*, 755 Fed.Appx. 359 (5th Cir. 2018) and *Wheeler*, 640 F.2d 1116, neither of which are binding upon this court.

Moreover, the court notes the Fifth Circuit in *Darwish* did not specifically require that a district court purport to invoke inherent authority upon issuing a no-contact order pursuant to such authority. In *Darwish*, the Fifth Circuit refrained from deciding whether a no-contact order was within a district court's inherent authority because the district court did not invoke inherent authority or otherwise impose the condition in response to concerns about interference with the administration of justice. *Id*. at 363. By contrast, upon imposing its no-contact order, this court expressed concern about defendant's conduct, including his history of obstructing justice, as well as the implications of such conduct on the administration of justice. (Rev. Hearing Trans. at 14:25-15:1-25). To the extent defendant argues the court prohibited contact with Fernandez to serve objectives other than the administration of justice, (Doc. 383 at 2-3), the court rejects such an argument upon review of the record.

The court also refrains from adopting the two-part test set forth in *Wheeler*. In *Wheeler*, the Ninth Circuit adopted a two-part test to review the propriety of a court's a no-contact order imposed pursuant to its inherent

powers. *Wheeler*, 640 F.2d at 1122. The *Wheeler* test requires a showing that the communication restrained posed "a clear and present danger or serious and imminent threat" and the no-contact order was "narrowly drawn" in contemplation of First Amendment rights. *See id*. Because the Third Circuit has not yet taken a position on *Wheeler*, this court refrains from doing so. Thus, upon review of defendant's arguments, the court does not find a clear error in its imposition of the no-contact order.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion to correct sentence (Doc. 379), will be **DENIED**.

An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 20, 2021**
16-85-04